UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX CORNS,<br><br>   Plaintiff,<br><br>   v.<br><br>LABORERS INTERNATIONAL UNION OF NORTH AMERICA; NORTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS; and HOD CARRIERS LOCAL UNION OF NORTH AMERICA,<br><br>   Defendant. | No. 09-CV-4403 MHP<br><br>**MEMORANDUM & ORDER**<br><br>**Re: PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

   Plaintiff Alex Corns filed this action against defendants Laborers International Union of North America ("LIUNA"), Northern California District Council of Laborers ("NCDCL"), and Hod Carriers Local Union No. 166 ("Local 166") (collectively "Union defendants"). Plaintiff alleges that Union defendants unlawfully levied assessments for "organizing fees" and/or increased "dues" without a secret ballot of Local 166 members, in violation of § 101(a)(3) of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 411(a)(3). Now before the court is plaintiff's motion for partial summary judgment and Union defendants' cross-motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Having considered the parties' arguments and submissions, the court enters the following memorandum and order.

BACKGROUND

Union Structure

The LIUNA is the International Union governing its subordinate Local Unions and District Councils. The NCDCL is an intermediate body of the LIUNA, and represents 15 local labor unions affiliated with the LIUNA. Local 166 is a local union affiliated with the LIUNA, and represents individual union members. Docket No. 28, (Corns Dec.) ¶¶ 2-3, 6. Local 166 is comprised of Masonry and Plasterer workers, and is divided into the Alameda/Contra Costa and San Francisco/San Mateo contingents.

The International Union Constitution grants the LIUNA the power to "issue charters to Local Unions, District Councils, and other subordinate bodies...decide all questions relating to the rights, privileges, and obligations of members and subordinate bodies...[and] establish, declare, decide, and enforce all matters of policy" for the International, and its subordinate bodies and members. Docket No.38, Joint Statement of Undisputed Facts ("JSUF"), Exh. 6 (Constitutions of the LIUNA, International Union Constitution) at Art. II, § 2 (a)-(c). The International Constitution is binding on all Local Unions and District Councils. *Id.* at Art. XVII, § 4.

District Councils, including the NCDCL, are empowered to bargain collectively on behalf of members of affiliated Local Unions within the limits provided by the International Constitution. Corns Dec., Exh. 1 (Constitutions of the LIUNA, Uniform District Council Constitution) at Art. II, § 2(e). Union defendants' constitution empowers the NCDCL to establish and regulate the amount of dues to be paid by union members to affiliated Local Unions. *Id.* at Article II, § 2(a), (e). Where the LIUNA issues a District Council Charter, all Local Unions within its territorial and/or craft jurisdiction are affiliated with that District Council. *Id.* Local 166 is an affiliate of the NCDCL and as such is subject to the District Council Constitution. *Id.* at Art. II, § 2(a); Art. III § 1.

The Uniform Local Constitution is binding on all Local Unions, including Local 166. Under the Uniform Local Constitution, "dues paid by members...to the Local Unions affiliated with a District Council shall be established and regulated by the District Council in accordance with the provisions of Article II, § 2 of the Uniform District Council Constitution." Corns Dec., Exh. 1

(LIUNA Uniform Local Constitution, Uniform Local Constitution) at Art. VIII, § 1.

LIUNA Organizing Fee Assessment

In September 2006, the LIUNA assessed and ratified at its annual convention an organizing fee of $0.25 per hour on every Local Union for all hours worked by its members in construction "to be phased in over three years, [and to be paid to] its regional organizing fund." JSUF, Exh. 1 (Report of the Committee on Organizing and Capital Strategies); Docket No. 36, (Robinson Dec.) ¶ 6. The LIUNA organizing fee was incorporated into Local 166 Agreements adopted in 2008, including an organizing fee increase of $0.25 for the San Francisco/San Mateo Plaster Agreement and an organizing fee increase of $0.16 for the San Francisco/San Mateo Masonry Agreement. Robinson Dec. ¶ 8. Organizing fees were not increased under the 2008 Alameda/Contra Costa Plastering or Alameda/Contra Costa Masonry Agreements because prior to March 2007, Local 166 members approved an organizing fee of $1.10 per hour worked under the Alameda/Contra Costa Plastering Agreement, as well as $0.60 per hour worked organizing fee under the Alameda/Contra Costa Masonry Agreement. Robinson Dec. ¶ 5.

Dues Increase

Under the 2008 Alameda/Contra Costa Masonry Agreement, Alameda/Contra Costa Plastering Agreement, and San Francisco/San Mateo Plastering Agreement, all of which were negotiated by the NCDCL on behalf of Local 166, dues were increased $0.50 per hour worked. Under the 2008 San Francisco/San Mateo Masonry agreement, also negotiated by the NCDCL on behalf of Local 166, dues were increased $0.60 per hour worked. Robinson Dec. ¶¶ 9, 19; JSUF, Exh. 4 (General Board Meeting Of Hod Carriers Local Union 166 Minutes, June 26, 2008). These Agreements were presented to Local 166 members on June 26. Robinson Dec. ¶ 17. In two successive open votes, Local 166 members ratified the Agreements. *Id.* After plaintiff raised questions regarding the legality of these dues increases, the NCDCL sent notice of a special Convention to reconsider the Local 166 dues increases ("Dues Convention"). JSUF., Exh. 3

(NCDCL Executive Board Meeting Minutes, July 25, 2008) at 3.  On September 19, Dues Convention delegates, including two representative of Local 166, voted to unanimously accept the dues increases in question.  Corns Dec., Exh. 7 (NCDCL Special Dues Convention of Delegates Minutes, September 19, 2008) at 1.

LEGAL STANDARD

Summary judgment may be granted only when, drawing all inferences and resolving all doubts in favor of the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); see generally *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-55 (1986).  A fact is "material" if it may affect the outcome of the proceedings, and an issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Id*. at 248.  The court may not make credibility determinations.  *Id*. at 255.  The moving party bears the burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  Once the moving party meets its initial burden, the non-moving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial.  Fed R. Civ. P. 56(e); see *Anderson*, 477 U.S. at 250.

DISCUSSION

I. Plaintiff Corns' Motion For Partial Summary Judgment

LIUNA Organizing Fee Assessment

The court first considers plaintiff's motion for partial summary judgment.  Plaintiff claims that the deduction of organizing fees from Local 166 members' wages is unlawful because the organizing fees (i) were not enacted by a secret ballot vote of membership, (ii) are in excess of the $0.25 per hour worked organizing fee authorized at the LIUNA Convention, and (iii) are not paid to a regional organizing fund.  None of these three arguments is convincing.

4

First, a secret ballot vote of membership is not required under § 101(a)(3)(B) "in the case of a labor organization, other than a local labor organization," for the levy of special assessments like the organizing fee in question. Section 101(a)(3) provides, in relevant part:

> "Except in the case of a federation of national or international labor organizations, the *rates of dues and initiation fees payable by members of any labor organization...shall not be increased, and no general or special assessment shall be levied upon such members, except*
>
> (A) in the case of a local labor organization, (i) by majority vote by secret ballot of the members in good standing voting at a general or special membership meeting....
>
> (B) *in the case of* a *labor organization, other than a local labor organization* or a federation of national or international labor organizations, (i) *by majority vote of the delegates voting at a regular convention, or at a special convention of such labor organization* held upon not less than thirty days' written notice to the principal office of each local or constituent labor organization entitled to such notice..."(emphasis added).

The LIUNA is an international labor organization, not a local labor organization, and thus can properly levy organizing fee assessments under the § 101(a)(3)(B) procedure absent a secret ballot vote. Accordingly, no secret ballot vote was required.

Second, organizing fees deducted from Local 166 members' wages are not in excess of the $0.25 per hour worked organizing fee authorized at the 2006 LIUNA Convention. Plaintiff's characterization of 2008 Alameda/Contra Costa Masonry Agreement and Alameda/Contra Costa Plastering Agreement organizing fee increases as $.60 and $1.10, respectively, is misleading, but rather can be more aptly described as carried over from previous Collective Bargaining Agreements. Robinson Dec. ¶ 5. Prior to 2007, Local 166 membership approved the collection of a $0.60 organizing fee under the Alameda/Contra Costa Masonry Agreement and an allocation of $1.10 under the Alameda/Contra Costa Plastering Agreement. *Id.*; Corns Dec., Exh.4 (NCDLC General Delegates Meeting Minutes, September 19, 2008). These organizing amounts have remained in place under the 2008 Agreements. Robinson Dec. ¶¶ 5, 17, 19; Corns Dec., Exh.4 (NCDLC General Delegates Meeting Minutes, September 19, 2008). Because the Alameda/Contra Costa Masonry Agreement and Alameda/Contra Costa Plastering Agreement organizing fees of $.60 and $1.10 per hour, respectively, were in effect prior to the negotiation of the 2008 Agreements in question, organizing fees were not increased under either the 2008 Alameda/Contra Costa Masonry or Plastering Agreements. Accordingly, organizing fees were not increased in excess of the $.25 cents per hour

5

organizing fee authorized at the 2006 LIUNA. Convention.

The organizing fees under the San Francisco/San Mateo Agreements of $0.16 and $0.25 per hour, respectively, are plainly not in excess of $0.25 per hour worked organizing fee authorized at the LIUNA Convention. Robinson Dec. ¶ 9; Corns Dec., Exh. 3 (2008 Hod Carriers Schedule of Wages); Exh. 4 (NCDLC General Delegates Meeting Minutes, September 19, 2008).

Third, plaintiff's claim that organizing fees deducted from Local 166 members' wages are not paid to a regional organizing fund is misleading. Plaintiff is incorrect in claiming that the $100,000 in organizing fees that Local 166 has received represent "extra dues" for Local 166 to spend as it sees fit. The organizing fees deducted from Local 166 members' wages are remitted to the Local 166 Trust Funds as required under the Collective Bargaining Agreements. Robinson Dec. ¶ 10. Trust fund administrators subsequently distribute organizing fees directly to the Northern California District Council of Laborers' International Organizing Department. *Id.* ¶ 14. Accordingly, the $0.25 organizing fee per hour worked is ultimately paid to a regional organizing fund and do not represent "extra dues" for Local 166 to spend as it sees fit.

Further, the LIUNA assessment of an organizing fee for all hours worked in construction was levied in a manner that adequately protected members' rights. *See Mori v. Intl. Bhd. of Boilermakers, Blacksmiths, Forgers, and Helps Local Lodge No. 6*, 653 F.2d 1279 (9th Cir. 1981). Local 166 was represented at the 2006 Convention by elected delegates that had the opportunity to speak out against and vote to reject the assessment in question. For the foregoing reasons, the organizing fee assessment was properly levied in accordance with §101(a)(3) of the LMRDA.

Dues Increase

Plaintiff challenges the dues increases contained in the Alameda/Contra Costa and San Francisco/San Mateo Collective Bargaining Agreements on the ground that they were not properly enacted by a secret ballot of Local 166 members as required by § 101(a)(3) of LMRDA. Though the legislative history on § 101(a)(3) is largely silent, *Burroughs v. Operating Engineers Local Union No. 3*, 686 F.2d 723 (9th Cir. 1982), is instructive. The Ninth Circuit in *Burroughs* characterized

6

1  §101(a)(3) as "a crucial ingredient in the amalgam of rights intended by Congress to promote real
2  union democracy." *Id*. at 728. By curbing the "potential for autocratic and unrepresentative rule of
3  union officers" and "preventing the leadership of a union from imposing arbitrary financial
4  extractions unilaterally on its members....Section 101(a)(3) was designed to vest control over
5  increases in rates of dues in the union members, not the union management." *Id*.

6  However, plaintiff incorrectly alleges that under the plain language of § 101(a)(3), local union dues can be increased only by a secret ballot vote of local union members. While the procedure in §101(a)(3)(A) governing dues increases "in the case of a local labor organization" requires a secret ballot vote for dues increases, this procedure is not required here because the NCDCL, a "labor organization, other than a local labor organization," levied the dues increase in question. Pursuant to § 101(a)(3)(B), dues may be increased by a "majority vote of delegates voting at...a special convention of such labor organization held upon not less than thirty days' written notice to the principal office of each local or constituent labor organization entitled to such notice." The NCDCL held its Dues Convention on September 19, more than thirty days after NCDCL provided notice on August 8 to all delegates of said convention. JSUF, Exh. 6 (NCDCL Notice of Special Convention). The NCDCL Dues Convention delegates unanimously accepted the dues increases in question. Corns. Dec., Exh. 7 (NCDCL Special Dues Convention of Delegates Minutes, September 19, 2008). The notice and procedural requirements of § 101(a)(3), respectively, are satisfied. *See NLRB v. SuCrest Corp.*, 409 F.2d 765, 768 (2nd Cir. 1969) (assessments authorized by special Council convention did not violate LMRDA § 101(a)(3)); *King v. Randazzo*, 346 F.2d 307, 310 (2nd Cir. 1965) (special convention created proper basis for collection of increased dues).

22  Plaintiffs's theory is inconsistent with *Mori*, in which the Ninth Circuit considered whether an international union could increase minimum dues for a single craft within affiliated locals. *Mori*, 653 F.2d 1279. The *Mori* court noted that "established practice at the time of enactment of the LMRDA, left untouched by Congress, allowed international unions to establish the dues structures of affiliated locals." *Mori*, 653 F.2d at 1285. Highlighting that (i) members of union locals were represented at the international convention by delegates elected by local union members, (ii) the dues increase did

7

not reflect an attempt on the part of the majority of the international union to exploit a worker minority, and (iii) the dues increase reflected the "judgment of the entire union concerning the needs of local lodges," the Ninth Circuit held that international unions could validly "establish dues structures of affiliated local unions" pursuant to § 101(a)(3) absent a secret ballot vote of membership. *Id*. at 1283-1285. Here, Local 166 members are represented at the NCDCL by two elected representatives. Robinson Dec. ¶3. Plaintiff cites no evidence that suggests the NCDCL intended to discriminate against Local 166 members. As in *Mori*, the judgment of the NCDCL and Dues Convention reflect the "judgment of the entire union concerning the needs of local lodges." *Mori*, 653 F.2d at 1284.

Contrary to plaintiff's claim, § 101(a)(3) is in fact "disjunctive," and prescribes an "alterative method" to a secret ballot vote of members for increasing dues pursuant to § 101(a)(3)(A). *Ranes v. Office Employees Union, Local 28*, 317 F.2d 915, 917 (7th Cir. 1963). § 101(a)(3) permits dues increases to be carried out via at least two distinct procedures. Specifically, if the increase is levied by a local labor organization, it must be approved be a secret ballot vote of the local's membership. If the increase is levied by a labor organization other than a local labor organization, increases may be approved by a majority of delegates at a regular or special convention. *Mori* supports this construction of § 101(a)(3):

> "[T]he action of international union pursuant to Section 101(a)(3)(B) of the Act increasing...dues payable by its members to their respective local unions can be enforced by an affiliated local union without first submitting the question of a dues increase to a vote of its members under section 101(a)(3)(A) of the Act." *Mori*, 653 F.2d at 1282, citing *Rane*s, 317 F.2d at 917.

The Ninth Circuit highlighted two considerations supporting this conclusion: (i) traditional union practices and (ii) adequate protection of individual members' rights.

Regarding the former, there is no basis for inferring that Congress, in enacting §101(a)(3), intended to "strip international unions of their traditional power to control the minima and maxima rates of dues." *Mori* 653 F.2d at 1282. The *Mori* court mirrored *Ranes* in assuming that "Congress did not wish to upset established union practice." *Id*. at 1283; *Ranes* 317 F.2d at 917 (it would be "wholly illogical" that a vote of members of a local union should be allowed to veto the action of a

8

duly constituted convention). This view was subsequently intimated by the Supreme Court in *American Fed'n of Musicians v. Wittstein*, 379 U.S. 171, 178 (1964) (traditional practices are relevant in interpreting the LMRDA). Granting plaintiff's motion for partial summary judgment would "strip international unions of their traditional power to control the minima and maxima rates of dues...upset established union practice," and drive the "wholly illogical" result of permitting Local 166 members to veto the action of the duly constituted Dues Convention. *Mori* 653 F.2d at 1282-3; *see also American Fed'n of Musicians,* 379 U.S. at 178.

Concerning protection of individual members' rights, the record here "does not reflect an attempt on the part of the majority of the international to exploit or discriminate against the minority." *Mori* 653 F.2d at 1284. The court attaches no significance to plaintiff's allegations concerning the number of NCDCL delegates receiving salaries from local unions, average salaries of these delegates, and the fact that delegates did not bear the cost of increased dues. Local 166 members twice voted to increase dues. Robinson Dec. ¶ 17. Thereafter, a Dues Convention comprised of sixty delegates, including two representatives elected by Local 166 members, voted unanimously to accept the dues increase in question. Corns Dec., Exh. 7 (NCDCL Special Dues Convention of Delegates Minutes, September 19, 2008); Exh. 8 (NCDCL General Delegate Meeting Minutes, September 19, 2008). Accordingly, Local 166 members' rights have been adequately protected, and no secret ballot was required. *See Ranes* 317 F.2d at 918 ("Congress has said that the purpose of [§ 101(a)(3)] is served when union members have representation at the council table where dues structures are changed"). Accordingly, the dues increases was properly approved by a majority of delegates at a property noticed special NCDCL Dues Convention. *Mori*, 653 F.2d at 1285; JSUF, Exh. 3 (NCDCL Executive Board Meeting Minutes, July 25, 2008); Corns Dec., Exh. 7 (NCDCL Special Dues Convention of Delegates Minutes, September 19, 2008).

Nonetheless, plaintiff alleges that under the plain language of the LMRDA, § 101(a)(3) does not provide alterative ways of raising local dues, but rather prescribes alternative ways of raising dues for distinct union bodies. Under plaintiff's theory, one union body may not impose a dues increase on the members of another independent body. The lone case that seemingly endorses plaintiff's

9

theory is *Patterson v. United Bhd. of Carpenters*, 906 F.2d 510, 514-515 (10th Cir. 1990), in which the Tenth Circuit stated that increases in dues must be enacted by the "the organization whose members will be required to pay the increase dues." *Id*. In *Patterson*, the Tenth Circuit enjoined a dues and per capital tax increase levied by an international union on seven local unions. *Id*. at 511. After members of an intermediary labor organization consistently voted to reject the increase in minimum basic dues for local union members, the international union required members to choose between two "revenue options," both of which would have resulted in members paying substantially higher dues, without an option to reject both proposals. *Id.* at 512. In holding that the international union could not levy a dues increase upon a minority of local unions, the *Patterson* court distinguished *Mori* on two grounds: (i) the affected members in *Mori* were not all members of a separate and distinct "labor organization," whereas the members of the local union in *Patterson* were all members of a distinct local labor organization, and (ii) the dues increase in *Mori* was an "across the board" increase on all members of the international union who qualified, whereas the dues increase in *Patterson* affected a minority of union members. *Id*. at 515.

Concerning the first distinction, Local 166 is in fact not a substantially distinct labor organization from the NCDCL. Local 166 and its members are bound by the decisions of the LIUNA and its intermediary body, the NCDCL. Corns Dec., Exh. 1 (Constitutions of the LIUNA, Uniform District Council Constitution) at Art. II, § 2(e). Though Local 166 members are technically not members of the NCDCL, they are members of LIUNA, the body from which NCDCL derives its authority. Under the Uniform Local Constitution, which is binding on all Local Unions, including Local 166, "dues paid by members...to the Local Unions affiliated with a District Council shall be established and regulated by the District Council." Corns Exh.1 (Constitutions of the LIUNA, Uniform Local Constitution) at Art. VIII, § 1. Local 166 is an affiliate of the NCDCL and as such is subject to the District Council Constitution. *Id.* (Constitutions of the LIUNA, Uniform District Council Constitution) at Art. II, § 2(a), Art. III §§ 1. District Councils, including the NCDCL, are empowered to bargain collectively on behalf of and establish dues paid by members of affiliated Local Unions. *Id.* at Art. II, § 2(e). Accordingly, Local 166 is not a substantially distinct labor

10

organization from the NCDCL, and thus the NCDCL did not impose a dues increase on members of an independent union body.

Further, even assuming that the NCDCL is a distinct labor organization relative to Local 166, the NCDCL did not raise dues for Local 166, but merely presented a Collective Bargaining Agreement containing the dues increases to Local 166 membership. Despite having the opportunity to reject this Agreement via open membership vote, Local 166 members approved the Agreement. Robinson Dec. ¶ 23. Accordingly, as in *Mori* and unlike *Patterson*, the procedure by which local union dues were increased afforded adequate protection of members rights. *Patterson v. United Bhd. of Carpenters*, 906 F.2d at 515.

Regarding the second distinction, *Patterson* did not hold that dues imposed on a minority of local unions, as opposed to dues imposed "across the board," are automatically invalid, but rather merely established that such dues increases "require more careful scrutiny." *Id* at 514. Even under careful scrutiny, the dues increases contained in the 2008 Collective Bargaining Agreements were levied in accordance with traditional union practice. Corns Dec., Exh. 1 (Constitutions of the LIUNA, Uniform District Council Constitution) at Art. II, § 2(e). Further, the dues increases were levied in a manner that adequately protected members' rights. Robinson Dec. ¶ 17; JSUF, Exh. 7 (NCDCL Special Dues Convention of Delegates Minutes, September 19, 2008); Exh. 8 (NCDCL General Delegate Meeting Minutes, September 19, 2008).

Plaintiff alternatively argues that the language of § 101(a)(3) does not permit the NCDCL to raise dues for Local 166 members, but rather merely authorizes a District Council to increase dues payable by "members of any labor organization," in this case local unions themselves. Plaintiff alleges that because members of the NCDCL are local unions and not individual members of local unions, §101(a)(3)(B)(i) does not permit an increase in the dues payable by members of the local unions, but rather only permits an increase in the dues payable by the local unions. However, this difference is without significance. Local union members are bound by the constitution and by laws of the union under which the local is an affiliated and subordinate body. *See Imel v. Zohn Mfg. Co.,* 481 F.2d 181, 183 (10th Cir. 1973). Local 166 members are bound by the provisions of the LIUNA

11

constitution and its intermediary body, the NCDCL. JSUF, Exh. 6 (Constitutions of the LIUNA, International Union Constitution) at Art. XVII, § 4. Accordingly, members of Local 166 are in substance members of NCDCL. The fact that members of the NCDCL are local unions themselves, and not members of local unions, is not significant.

Plaintiff also baldly contends that interpreting § 101(a)(3) as permitting District Councils to increase dues payable by members of the local unions would eliminate the protection local union members have over increases in dues for local unions. Plaintiff does not point to any evidence in the record to support this conclusion. On the contrary, Local 166 members twice voted to increase dues. Robinson Dec. ¶ 17. Further, Local 166 was represented at the Dues Convention by two delegates to the NCDCL that actually voted to increase Local 166 dues. Robinson Dec. ¶ 3.

Plaintiff's claim that Union defendants improperly collected dues in the 11.5 weeks leading up to the Dues Convention is without legal support. Since we have determined that the dues increase was valid as of June 26, 2008, when it was approved by Local 166 membership in an open vote, the increase is valid as of that date. Accordingly, plaintiff's characterization of the dues collected during this 11.5 week period as "retroactive" is misleading, but rather can be more aptly described as prospective dating back to June 26.

For the foregoing reasons, the court hereby DENIES plaintiff's motion for partial summary.

II. Union Defendants' Cross-Motion for Summary Judgment

For the foregoing reasons, both the organizing fee assessment and the dues increase were properly levied in accordance with § 101(a)(3) of the LMRDA.

Because plaintiff has not identified any evidence presenting a genuine issue of material fact, summary judgment is GRANTED in favor of Union defendants.

CONCLUSION

12

For the foregoing reasons, plaintiff Alex Corns' motion for partial summary judgment is DENIED. Union defendants' cross-motion for summary judgment is GRANTED.

IT IS SO ORDERED.

Dated: February 25, 2011

MARILYN HALL PATEL
United States District Court Judge
Northern District of California