UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX CORNS,<br><br>    Plaintiff,<br><br>    v.<br><br>LABORERS INTERNATIONAL UNION OF NORTH AMERICA; NORTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS; AND HOD CARRIERS LOCAL UNION NO. 166, AFFILIATED WITH THE LABORERS INTERNATIONAL UNION OF NORTH AMERICA,<br><br>    Defendants. | Case No.: 09-CV-4403 YGR<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND** |

Plaintiff Alex Corns brings the instant action against Laborers International Union of North America ("LIUNA"); Northern California District Council of Laborers ("District Council"); and Hod Carriers Local Union No. 166 ("Local 166") under the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 412. On March 7, 2013, the Ninth Circuit reversed in part the order granting summary judgment in favor of Defendants, and remanded the action for further proceedings consistent with its opinion. *Corns v. Laborers Int'l Union of N. Am.*, 709 F.3d 901, 915-16 (9th Cir. 2013). Mandate issued thereafter on June 26, 2013, and Plaintiff filed his Motion For Leave To File Amended Complaint (Dkt. No. 59).

Having carefully considered the papers submitted and the pleadings in this action, and the arguments of counsel, and for the reasons set forth below, the Court **DENIES** Plaintiff's Motion for Leave To File Amended Complaint.

## I. BACKGROUND

### A. SUMMARY OF FACTS

Corns filed the instant action against Defendants on September 18, 2009. Corns is now retired, but was, at the time of the filing of this lawsuit, a member of Local 166. Local 166 is a local union affiliated with LIUNA.

The complaint challenged two different fees imposed on Local 166 members: (1) organizing fees imposed by LIUNA as a result of LIUNA's 2006 general convention, at which delegates ratified a resolution requiring local unions to phase in a regional organizing fee; and (2) dues increases included in the 2008–2010 Local 166 collective bargaining agreements.

At a general meeting held on June 20, 2008, the District Council approved the 2008–2010 Agreements negotiated by the District Council on behalf of Local 166, all of which included wage and dues increases. The agreements contained an effective date of July 1, 2008.

Thereafter, on June 26, 2008, the agreements were presented to Local 166 members at a general board meeting. Corns objected at the meeting and requested that a standing vote count of the membership be taken to approve the new agreements. Despite the fact that the 2008–2010 Local 166 Agreements had already been ratified by the District Council, a standing vote of the Local 166 members was taken regarding the dues increases. A majority of Local 166 members voted in favor of the 2008–2010 Local 166 Agreements, including the dues increases therein.[1]

Corns wrote LIUNA's general president to express his concern about the imposition of a dues increase by the District Council without a secret ballot vote of the local membership. The District Council then convened a special dues convention to reconsider the dues increases. At the special convention held on September 19, 2008, the District Council's delegates, including two

---

[1] Local 166's sergeant-at-arms conducted the standing vote, which resulted in thirty votes in favor of the 2008–2010 Local 166 Agreements and twenty-nine votes against. Corns challenged the vote on the ground that the sergeant-at-arms was the son of Local 166's business manager. At the business manager's request, the District Council's assistant business manager requested the approval of the membership to take another standing vote count. Following the membership's approval of his request, the membership also approved a request to permit a District Council executive board member to take the count with the District Council's assistant business manager. The second standing vote resulted in thirty-six votes in favor of, and thirty votes opposed to, the 2008–2010 Local 166 Agreements.

Local 166 representatives, voted unanimously to approve the dues increase included in the 2008–2010 Local 166 Agreements.

Corns again wrote a letter to LIUNA objecting to the vote of the District Council special convention. LIUNA's general president responded to Corns on March 13, 2009, explaining that LIUNA took the position that Local 166's dues were properly increased in accordance with the Uniform District Council and Uniform Local Union constitutions.

### B.  PROCEDURAL HISTORY

On September 18, 2009, Corns filed this lawsuit, seeking damages for the increased dues and organizing fees deducted from his wages as a member of Local 166, declaratory relief to prevent the District Council from imposing dues increases, and injunctive relief. The parties filed a joint case management statement on March 5, 2010, which stated:

> The case is not presently brought as a class action. However, the equitable relief sought would affect all members of Local 166. Plaintiff does not believe that a class action is necessary to obtain relief as to the legality of the dues increase itself, since section 102 of the LMRDA authorizes appropriate relief in any action brought under the LMRDA. Once the court determines the legality of the increase, class certification may be appropriate to ensure restitution if it appears that the unions may not do so voluntarily. See *Hummel v. Brennan* (E.D. Pa. 1979) 83 F.R.D. 141 (class certified for purposes of enforcing dues restitution order). Defendants do not agree this action is appropriate for treatment as a class action or class certification and will oppose any such motions.

(Joint Case Management Statement, Dkt. No. 13, at 6-7, emphasis added.) The district court held a case management conference with the parties on March 15, 2010. At that case management conference, the Court inquired as to whether Corns was seeking relief on behalf of a class and, if so, whether he intended to add class allegations or a motion for class certification. Corns' counsel acknowledged that the complaint had not been filed as a class action:

> [Plaintiff is] willing to amend that, but our thought was, frankly that since the Court under section 102 of the LMRDA has broad equitable powers…much like, I think, one other case we cited in the district court where they made the ruling on the merits on liability in advance of a class action ruling, and then as part of the remedy, considered whether a class action would be appropriate. [¶] It's a little unusual, but that seemed to be a practical solution by that district court. And so my thinking was that that might be a practical solution here. I have no real objection to bringing in a class action.

3

(Defendants' Response to Plaintiff's Supplemental Status Statement, Dkt. 84-1, Exh. [Transcript, District Judge Marilyn Hall Patel presiding] at 3:5-16.) Counsel continued that he would "hate to get sort of into the class action arguments and notice and things like that sort of in advance, where the issue I perceive as being largely just a legal issue where the damages would just simply flow mathematically from that, from a legal decision." (*Id.* at 3:21-25.) The Court responded to counsel's suggestion as "admirable, because there is no point in mucking up… [the case with] more procedural activity than merits." (*Id.* at 4:1-5.) The Court proceeded to discuss with the parties a plan and schedule for cross-motions on the legal issues, with no further discussion of amending the complaint to allege a class or any class certification proceedings during that conference, or apparently at any time thereafter. And, for their part, Defendants never specifically addressed Plaintiff's notion that proceeding with the merits on summary judgment would leave open the possibility of pleading or certifying a class later.

The parties filed cross-motions for summary judgment on December 13, 2010. The Court issued its order February 25, 2011, denying Corns' motion for partial summary judgment and granting Defendants' motion. (Dkt. No. 42.) That same day, the Court entered judgment in favor of Defendants. (Dkt. No. 43.) No amendment adding class allegations was made prior to summary judgment. Plaintiff filed a timely notice of appeal. (Dkt. No. 46.)

The Ninth Circuit considered the appeal, affirming in part and reversing in part, in its decision issued March 15, 2013. (Dkt. No. 50.) On review, the Ninth Circuit affirmed summary judgment on the issue of LMRDA compliance in enactment of organizing fees. However, the Ninth Circuit determined that the vote to increase local union dues was not properly approved, since the vote was not undertaken by the "members" of Local 166. Reversing the district court's grant of summary judgment on the union dues issue, the Ninth Circuit held:

> To properly impose a dues increase, the [District Council], which is not a local labor organization, must comply with the requirements set forth in § 101(a)(3)(B) of the LMRDA. 29 U.S.C. § 411(a)(3)(B). The statute only permits a labor organization to impose a financial extraction, such as a dues increase, on its own members. *Id.* § 411(a)(3). As explained above, under the LMRDA, a "member" "when used in reference to a labor organization, includes any person who has fulfilled the requirements for membership in such organization, and who neither has voluntarily withdrawn from membership nor has been expelled or suspended

4

> from membership after appropriate proceedings consistent with lawful provisions of the constitution and bylaws of such organization." *Id.* § 402(*o*). We therefore look to the [District Council's] constitution and bylaws to determine who is a member of the labor organization.
>
> The International Union and Uniform District Council constitutions explicitly define the membership of district councils, such as the [District Council here], as the delegates from affiliated local unions, who have been elected in the manner and number provided for in the Uniform District Council Constitution. Int'l Union Const. art. XIX, § 5; Unif. Dist. Council Const. art. I, § 2, art. IV, § 1.
>
> …the membership qualifications and obligations delineated in the Uniform District Council Constitution, which are relevant under the LMRDA for purposes of defining a labor organization's membership, apply to union delegates, not individual union members. Unif. Dist. Council Const. art. IV, §§ 3–4. We also find it significant that the International Union Constitution expressly provides that the members of [the International] consist of the members of its affiliated local unions. Int'l Union Const. art. I, § 1.
>
> … the mere fact that Local 166 members are bound by the constitutions and bylaws of all of the labor organizations in the Unions' hierarchy is not sufficient to bring them within the definition of "member" for purposes of the LMRDA.
>
> … We therefore conclude that the [District Council] violated § 101(a)(3) of the LMRDA when it imposed a dues increase on Local 166 members.

*Corns v. Laborers Int'l Union of N. Am.*, 709 F.3d 901, 915-16 (9th Cir. 2013). Having so held, the Ninth Circuit remanded to this Court "for further proceedings consistent with this opinion." *Id.* at 916.

Plaintiff's requests for rehearing *en banc* were denied, and mandate ultimately issued on June 28, 2013. (Dkt. Nos. 51-55.)

**II.   DISCUSSION**

Plaintiff's motion seeks to amend the complaint, ostensibly to add additional class action allegations, two additional plaintiffs/class representatives, and a state law claim under the California Unfair Competition Law ("UCL"), Cal. Business & Professions Code section 17200.

Generally, leave to amend is liberally granted and is left to the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Sonoma Cnty. Ass'n of Retired Employees v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013). A number of factors may affect

the decision to allow leave to amend, including: (1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party. *See Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798 (9th Cir. 1991) (affirming denial of leave to amend where plaintiff did not seek to amend under eight months after the district court granted summary judgment against it and nearly two years after filing the initial complaint); *United States v. Pend Oreille Pub. Util. Dist. No. 1,* 926 F.2d 1502, 1511 (9th Cir.1991) (reciting factors and indicating that delay alone not sufficient grounds to deny leave to amend).

Here, Defendants argue that Plaintiff's proposed amendments are futile, that Plaintiff delayed unduly, and that the proposed amendments would expand the scope of the litigation unfairly. The Court considers these factors, first as applied to the proposed class allegations and two new plaintiff-class representatives, and then as to the proposed UCL claim.

**A.     Class Action Allegations and New Class Representatives**

*1.     Undue Delay and Prejudice*

Looking first to the prejudice and delay factors, the Court finds that Plaintiff's request to add class allegations was unduly delayed and would result in prejudice to Defendants. An amendment seeking to add class allegations at this point in the life of the litigation would run counter to Rule 23's policy of preventing one-way intervention. Rule 23(c)(1) requires the district court to rule on class certification "at an early practicable time" after the filing of the lawsuit. Fed. Rules Civ. Proc. 23(c)(1). "[T]he history of the development of Rule 23(c)(2) makes clear that the rule was adopted to prevent 'one-way intervention'—that is, the intervention of a plaintiff in a class action after an adjudication favoring the class had taken place," and declining to intervene or opt-in if the ruling was not favorable to plaintiff. *Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th Cir. 1995). "[I]t is unsettled in the Ninth Circuit whether—and if so, in what circumstances—equity can support post-judgment certification and notice after determination" of a summary judgment motion. *Gomez v. Rossi Concrete Inc.,* 2011 WL 666888, *2 n.1 (S.D. Cal. 2011). Other circuit courts have affirmed denial of class certification based on the principle that certification after judgment has been entered would allow putative class members to wait and see whether the judgment was favorable to plaintiff before joining, and being bound by, the action. *See Kerkhof v. MCI*

6

*WorldCom, Inc.*, 282 F.3d 44, 55 (1st Cir. 2002), citing *Am. Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 545–49 (1974); *Paxton v. Union Nat. Bank,* 688 F.2d 552, 558 (8th Cir. 1982) ("It is rarely appropriate for a court to delay the certification decision until after a trial on the merits."); *Horn v. Associated Wholesale Grocers, Inc.,* 555 F.2d 270, 273 (10th Cir. 1977) ("The district court's delay in making a decision on certification of the class until after the trial on the merits appears to be a procedure which is not in harmony with the literal terms of Rule 23(c)(1) or with many of the cases."); *Gooch v. Life Investors Ins. Co. of America,* 672 F.3d 402, 432 (6th Cir. 2012) ("The rule against one way intervention prevents potential plaintiffs from awaiting merits rulings in a class action before deciding whether to intervene in that class action."); *see also* Advisory Committee's Note to Proposed Amendments to Rule 23, 39 F.R.D. 69, 105 (1966).  As the district court in *Gessele v. Jack in the Box, Inc.* noted, "[o]ne-way intervention is unfair to the defendant because it places a putative class member in a no-lose position by knowing the outcome as to liability before deciding to opt in or out of the class."  *Gessele v. Jack in the Box, Inc.,* 2012 WL 3686274, *3 (D. Or. 2012) (citing *Schwarzschild,* 69 F.3d at 295).  While a district court has discretion to consider summary judgment prior to deciding class certification, it should do so when the parties will not suffer significant prejudice and defendant has consented to waive the protection afforded by an earlier ruling on class certification.  *Wright v. Schock*, 742 F.2d 541, 543-44 (9th Cir. 1984); *Gomez v. Rossi Concrete Inc.*, 08CV1442 BTM CAB, 2011 WL 666888 (S.D. Cal. Feb. 17, 2011) ("allowing absent plaintiffs to [join a class] after the Court adjudicates issues of liability in the underlying case would unfairly prejudice Defendants").

Here, not only was no class certified prior to entry of judgment, no class was alleged.  While Plaintiff now contends that Defendants had notice that he intended to amend to add class allegations and seek relief on behalf such a class, evidence in support of this contention is lacking.  Plaintiff's statements in the case management statement and conference were, at best, ambiguous.  Counsel represented that he did not believe class allegations or certification were necessary to get relief for the violation.  He stated that "*the equitable relief sought would affect all members* of Local 166" and "Plaintiff *does not believe that a class action is necessary* to obtain relief as to the legality of the dues increase itself" given the LMRDA's broad equitable relief provisions. (Joint

7

Case Management Statement, Dkt. No. 13, at 6-7 [emphasis supplied]; *see also* Transcript 3:5-16; 3:21-25.) Counsel's statements were consistent with the original complaint's request for injunctive and declaratory relief, which would inure to the benefit of other Local 166 members if granted. Counsel made no mention of damages to be paid to any class members, as are now sought in the proposed First Amended Complaint. (*See* Declaration In Support of Motion, Exhibit 1, Proposed First Amended Complaint [Dkt. No. 60-1] at Prayer, ¶ 2 (c), (d), (f).)[2]

While Corns may have intended to assert class claims earlier in the litigation, he plainly opted not to make such an amendment, even after prompting by the Court at the case management conference. Permitting Corns to add class allegations now, and to seek "damages" on behalf of the proposed class members, is prejudicial to Defendants and disruptive to the orderly management of the case.

### 2. *Futility*

Turning to the futility factor, the Court finds that amendment to add class allegations years after the initiation of this litigation (and, indeed, after judgment and appeal) would also be futile. The new class allegations are time-barred, since they do not relate back to the filing of the original complaint. The parties agree that the statute of limitations on the LMRDA claims, a two-year period running from the date of the imposition of the dues increase, has run. The question is whether the class claims would relate back to the original date of filing for purposes of the limitations period.

Rule 15(c) does not deal specifically with whether amendments adding plaintiffs "relate back" to the date of the original complaint, but the rules regarding adding defendants are applied by analogy. *Immigrant Assistant Project of Los Angeles County Fed'n of Labor (AFL-CIO) v. INS*, 306 F.3d 842, 857 (9th Cir. 2002). "An amendment adding a party plaintiff relates back to the date of the original pleading only when: (1) the original complaint gave the defendant adequate notice of

---

[2] Further, the case Plaintiff cited in the case management statement in support of his approach, *Hummel v. Brennan,* 83 F.R.D. 141 (E.D. Pa. 1979), is one where a preliminary injunction was granted early in the case, and the parties agreed to a permanent injunction shortly thereafter. *Id.* at 144. The court there found that, under the circumstances, class certification after entry of the injunction was warranted for purposes of ordering restitution. There was no indication that the original complaint did not seek relief on behalf of a class.

8

the claims of the newly proposed plaintiff; (2) the relation back does not unfairly prejudice the defendant; and (3) there is an identity of interests between the original and newly proposed plaintiff." *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 935-36 (9th Cir. 1996) (citing *Besig v. Dolphin Boating & Swimming Club,* 683 F.2d 1271, 1278-79 (9th Cir.1982)); *see also Immigrant Assistant Project*, 306 F.3d at 857 (same); *see* Fed. Rules Civ. Proc. 15(c) (when an amendment relates back).

Here, Plaintiff argues that Defendants had notice of the claims and theories, and had notice that he was seeking relief on behalf of all Local 166 members who paid the increased dues on a class-wide basis. The complaint concededly did not allege a class action.

Again, the Court finds that Plaintiff did not give Defendants sufficient notice for purposes of relation back of an amendment to add class allegations. Plaintiff did not give clear notice that he intended to allege and certify a class, given his belief that such a class would not be necessary to afford the relief sought in the complaint. Plaintiff gave no notice that he would be seeking damages on behalf of a class. The litigation proceeded to judgment and through appeal. To permit new plaintiffs to take advantage of the final determination of the legal issue, and belatedly seek not only equitable relief but money damages, would be prejudicial to Defendants, in addition to changing the scope of the litigation here significantly. Unlike cases cited by Plaintiff, the original complaint does not put the defendant on notice of a class-wide action seeking the full scope of relief Plaintiff seeks to add. *See Immigrant Assistant Project*, 306 F.3d at 857-58 (prior complaint filed "on behalf of persons" affected by regulations and policies and challenging policy generally, giving sufficient notice of class-wide relief sought); *Paskuly v. Marshall Field & Co.,* 646 F.2d 1210, 1211 (7th Cir.), *cert. denied,* 454 U.S. 863 (1981) (under authorities relating to Title VII class actions alleging unlawful discrimination, defendants were on notice of possibility of class action based on allegations in original complaint). Having failed to amend the complaint to add allegations on behalf of a class, Plaintiff forewent any tolling of class claims that might have applied. *See In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 936 (9th Cir. 1996) (no tolling of statute of limitations by filing of original complaint for those seeking to expand class definition to include them); c*f. American Pipe and Construction Co. v. Utah,* 414 U.S. 538, 554 (1974) ("the commencement of a

class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action"). Assuming there is an identity of interests between Plaintiff's claims and those of the proposed new class, both notice and prejudice concerns weigh heavily here. Thus, the Court finds that the claims of the proposed class do not relate back to the filing of the original complaint here and are time-barred, making amendment to add class claims and new plaintiff class representatives futile.[3]

Because of the significant delay in seeking to add class allegations, the prejudice to Defendants of a newly alleged scope of litigation, and the futility of amending at this juncture, especially given the Court's broad discretion to fashion an appropriate remedy, the Court finds that this is the somewhat rare motion to amend that it must deny.

### B. UCL CLAIM

Defendants argue that the motion for leave to amend should be denied because the proposed UCL claim is time-barred and is not a viable claim on its merits, making amendment futile.

The statute of limitations on a UCL claim is four years. Cal. Bus. & Prof. Code § 17208. Thus, the proposed new UCL claim is time-barred here unless it relates back to the filing of the original complaint. Relation back of a new claim between the existing parties is proper if the new claim arises out of the same operative facts, *i.e.,* "conduct, transaction or occurrence," pleaded in the original complaint. *See Mayle v. Felix,* 45 U.S. 644, 656 (2005); *Martell v. Trilogy, Ltd.* 872 F2d 322, 325 (9th Cir. 1989). Here, Plaintiff's proposed UCL claim is not time-barred on its face because it arises out of the same facts Plaintiff alleged in support of his original LMRDA claim challenging the dues increase vote.

However, and more significantly, the Court finds leave to amend should not be granted because the UCL claim is superfluous and would only serve to delay already protracted litigation. The UCL claim does not introduce a new theory or basis for liability, but relies entirely on the (already established) LMRDA violation. The question of whether a union can be liable to a

---

[3] Defendants further argue that the motion must be denied as to the proposed new plaintiff-class representatives, since they have not exhausted their remedies as required by the LMRDA, 29 U.S.C. § 411(a)(4). Because the Court finds that the complaint cannot be amended to add the class allegations, it declines to reach the exhaustion issue.

member under the UCL for violations of federal law appears to be one of first impression.  Further, as Defendants argue, such a claim may be preempted by federal labor law.[4]  Regardless, the equitable and other relief sought in connection with the UCL claim is completely encompassed by that sought in connection with the LMRDA claim, including the availability of attorneys' fees (the apparent import of the proposed amendment).  Thus, the UCL claim is entirely duplicative of the LMRDA claim.  Its inclusion would not add anything to the case.  Coupled with the lengthy delay in bringing the motion for leave to amend, and the obvious prejudice to the defendants of re-opening the litigation at a stage in the case when all that should be left for the Court and parties is to determine an appropriate remedy, the Court exercises its discretion to deny leave to amend.

### III.  CONCLUSION

Accordingly, the Motion for Leave To File Amended Complaint is **DENIED**.

This terminates Docket No. 59.

**IT IS SO ORDERED**.

Date: March 31, 2014

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[4] Defendants argue that the proposed UCL claim would be preempted by the Labor Management Relations Act, 29 U.S.C. § 185(a) ("Section 301"), since adjudication of the UCL claim would require interpretation of those constitutions which are "contracts" within the meaning of that statute.  The LMRDA's savings clause would seem to allow the claim.  29 U.S.C. § 523; *Bloom v. Gen. Truck Drivers, Office, Food & Warehouse Union, Local 952*, 783 F.2d 1356, 1360 (9th Cir. 1986) (section 523 saves causes of action by union members; plaintiff's claim not saved because it was brought in his capacity as a union employee for wrongful termination).  Further, it is not clear that the claims here are "inextricably intertwined with consideration of the terms of [a] labor contract," so as to be preempted under Section 301.  *Allis–Chalmers Corp. v, Lueck,* 471 U.S. 202, 210–11 (1985).  However, in light of the other factors weighing heavily against amendment, the Court does not reach the preemption question.