**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ALEX CORNS,**<br><br>  Plaintiff,<br><br>  v.<br><br>**LABORERS INTERNATIONAL UNION OF NORTH AMERICA; NORTHERN CALIFORNIA DISTRICT COUNCIL OF LABORERS; AND HOD CARRIERS LOCAL UNION NO. 166, AFFILIATED WITH THE LABORERS INTERNATIONAL UNION OF NORTH AMERICA,**<br><br>  Defendants. | Case No.: 09-CV-4403 YGR<br><br>**ORDER ESTABLISHING PLAINTIFF'S ENTITLEMENT TO RELIEF ON REMAND;' GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES** |

Presently before the Court are the issues on remand of this action from the Ninth Circuit Court of Appeals, following a reversal in part of the Court's Order Granting Summary Judgment in favor of Defendants Laborers International Union of North America ("the International"); Northern California District Council of Laborers ("District Council"); and Hod Carriers Local Union No. 166 ("Local 166") (collectively, "Defendants") against Plaintiff Alex Corns ("Corns"). *Corns v. Laborers Int'l Union of N. Am.*, 709 F.3d 901 (9th Cir. 2013).

Corns filed the instant action against Defendants on September 18, 2009. His complaint challenged two different fees imposed on Local 166 members: (1) organizing fees imposed by the International as a result of the International's 2006 general convention; and (2) dues increases included in the 2008–2010 Local 166 collective bargaining agreements (CBAs). The district court, in granting summary judgment in favor of Defendants, found that the fees and dues increases were lawfully implemented consistent with the union democracy requirements of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 412 ("LMRDA"). The Ninth Circuit, on review, affirmed the denial of Corns' challenge to the organizing fees, but held that the vote by the District Council approving the dues increases in the 2008–2010 Local 166 CBAs was improper because the

members of Local 166 were not "members" of the District Council. The remand from the Ninth Circuit directed this Court to conduct "further proceedings consistent with" its opinion.

The parties have, at the direction of the Court, submitted briefing and evidence on the issues remaining, namely the appropriate remedy for the one violation of section 101(a)(3) of the LMRDA, found by the Ninth Circuit.

Having thoroughly reviewed the parties' submissions and evidence in support of the remedy and the related issues identified by the Court's March 31, 2014 Order (Dkt. No. 88), measures taken by Defendants after remand, as well as the arguments and evidence submitted in support of and in opposition to Plaintiff's Motion for Attorneys' fees, and for the reasons stated herein, the Court **ORDERS** that: (1) Plaintiff shall be awarded $126,562.50 in attorneys' fees and costs; and (2) no additional form of relief, such as restitution, injunctive relief, declaratory relief, or penalties is warranted.

**A.   SUMMARY OF FACTS**

The Ninth Circuit's opinion set forth the facts of the case in detail. This Court now summarizes those facts salient to this order. Local 166 members' dues and fees are dictated by multiple collective bargaining agreements, some of which are negotiated by the District Council. Depending upon where the members are called to work, their pay, dues, and fees, may be set by a CBA negotiated by Local 166, negotiated by the District Council on their behalf, or negotiated by the District Council on behalf of multiple local unions in various Northern California counties.

The District Council's membership consists of delegates from its affiliated local unions. It possesses the constitutional authority "[t]o negotiate, bargain for and enter into understandings and agreements with employers, for and [on] behalf of its affiliated Local Unions and to enforce and police the observance thereof by employees and employers, Local Unions and their members…." (Unif. Dist. Council Const. art. II, § 2(d).) The Uniform District Council Constitution also empowers the District Council to establish and regulate the amount of dues and fees paid by members of the affiliated local unions, including Local 166. (*Id.* art. II, § 2(e).) The District Council must convene a special convention at which delegates vote on whether an increase in dues or fees is necessary for one or more of the fifteen local unions. (*Id.* art. VIII, § 2.)

The dues increases challenged by Corns were included in the 2008–2010 Local 166 collective bargaining agreements negotiated by the District Council. Imposition of these dues and fees increases resulted from a vote of the District Council at a general meeting held June 20, 2008, and went into effect on July 1, 2008.

Corns wrote the International's general president to express his concern about the imposition of a dues increase absent a secret ballot vote of the local membership. The District Council's executive board proposed, and the District Council approved, a special convention to be held September 19, 2008, to consider the dues increase.

Although the 2008–2010 Local 166 collective bargaining agreements had already been ratified by the District Council's vote on June 20, 2008, they were presented to Local 166 members at a general board meeting on June 26, 2008. Corns requested that a standing vote of the Local 166 membership be taken to approve the new agreements. A standing vote of the members present was taken, and resulted in a narrow majority (30-29) in favor of the agreements. Corns then challenged the vote on the grounds that the person conducting the vote was the son of the Local 166 business manager. A new vote of the Local 166 members then present, resulting in approval by 36 votes in favor, and 30 votes opposed.

Nearly three months later, on September 19, 2008, the District Council held the scheduled special convention to consider the dues increase. At the special convention, the District Council's delegates, including two Local 166 representatives, voted unanimously to approve the dues increase included in the 2008–2010 Local 166 Agreements.

Corns then wrote a letter to the International objecting to the increases approved at the District Council special convention. The International's general president responded to Corns on March 13, 2009, explaining that the International took the position that the dues were increased properly, in accordance with the Uniform District Council and Uniform Local Union constitutions.

**B. PROCEDURAL HISTORY**

Corns' complaint alleged that (1) organizing fees imposed by the International as a result of the International's 2006 general convention; and (2) dues increases included in the 2008–2010 Local 166 collective bargaining agreements were imposed in violation of the LMRDA. As to the

dues increases, Corns alleged they were not lawful since they were imposed without a secret ballot of the members of Local 166, and instead were adopted by the District Council in an increase that affected only Local 166. Corns alleged that the provisions of Defendants' constitutions permitting the District Council to adopt dues increases for individual, affiliated local unions were invalid under the LMRDA.[1] The complaint sought reimbursement of the dues and fees collected from Corns under the 2008-2010 Local 166 Agreements, declaratory relief to prevent the District Council from imposing dues increases, and injunctive relief.

On December 13, 2010, the parties filed cross-motions for summary judgment. In granting summary judgment in favor of Defendants, the district court concluded that the LMRDA provides alternative methods for levying assessments and increasing dues, and requires a secret ballot vote of the local membership only when a local labor organization imposes an assessment or dues increase. Because the District Council was not a local labor organization, the district court concluded that the District Council validly approved the dues increase by a vote of delegates at a special convention of the District Council in accordance with section 101(a)(3)(B)(i).

On review, the Ninth Circuit determined that the District Council's vote to increase the dues was not proper under the LMRDA. *Corns,* 709 F.3d at 915-16. The Ninth Circuit agreed with the district court that the District Council was not required to act by a secret ballot, since it is not a "local labor organization." However, the Ninth Circuit determined that the District Council could only impose a dues increase on its *own* members. *Id.*, citing 29 U.S.C. § 411(a)(3). Not all members of Local 166 were members of the District Council, only a handful of delegates. Thus, the Ninth Circuit reversed the district court's decision on this issue, though for different reasons than Corns argued.

Upon remand, Corns sought to amend the complaint to expand his theories for relief and to add class action allegations. Defendants sought an order directing that the Court order relief in the form of a retroactive election on the propriety of the 2008-2010 Agreements. The Court denied both requests. (*See* Orders at Dkt. No. 87 and 88.) In the Order denying a retroactive election

---

[1] Since the Ninth Circuit affirmed dismissal of Plaintiff's complaint with respect to the organizing fees, this summary of facts discusses that portion of the complaint only as necessary.

4

without prejudice, the Court set an evidentiary hearing, and ordered briefing and submission of evidence to allow the Court to reach a determination on the appropriate relief. (Dkt. No. 88, "March 31 Order".)

In advance of that evidentiary hearing, on April 28, 2014, the Court held a pre-hearing conference with the parties. Based upon the list of witnesses and documents submitted by Plaintiff, the Court determined that Plaintiff's proffered evidence would expand the issues for the evidentiary hearing beyond those appropriately before the Court. The focus of the evidence Corns sought to present concerned new allegations of an improper ratification vote after remand, and evidence that Local 166's payroll expenses were excessive compared to other local unions. Having already denied Plaintiff's post-remand motion for leave to amend the complaint, the Court determined that the additional evidence would not be relevant to a determination of the proper remedy here. (Dkt. No. 98; *see also* Transcript of April 28 hearing at 17-26.) Corns' pre-hearing submissions and argument demonstrated that he had no intention of offering any new evidence material to a decision on the appropriate remedy, aside from the attorneys' fee issue. Consequently, rather than take live testimony on irrelevant matters, the Court vacated the evidentiary hearing and ordered the parties to submit further briefing on Plaintiff's motion for attorneys' fees. (Dkt. No. 98.)[2]

Plaintiff has, at the direction of the Court, filed his Motion for Attorneys' fees. (Dkt. No. 104, 105.) Defendants have responded and Plaintiff submitted his reply. (Dkt. No. 108, 109, 110.)

### I.  REMEDY

Pursuant to section 102, 29 U.S.C. § 412, the Court has broad authority to order appropriate relief to remedy a violation of the LMRDA. *Hall v. Cole*, 412 U.S. 1, 10-11 (1973) (broad mandate to fashion relief included award of attorneys' fees in appropriate situations) (citing *Gartner v.*

---

[2] On July 18, 2014, Plaintiff submitted a letter seeking a pre-filing conference in advance of filing a summary judgment motion, consistent with this Court's Standing Orders. (Dkt. No. 113.) The proposed summary judgment motion is entirely duplicative of the process by which the Court has stated it would reach a determination of the appropriate remedy. Having failed to suggest any different procedures for resolution of the remaining issues at any time in the interim since the Ninth Circuit's remand over a year ago, Plaintiff's belated idea to file a motion for summary judgment to argue the exact same issues as are pending before the Court already is without merit, and would only serve to unnecessarily increase the fees in this matter. The request is **DENIED**.

5

*Soloner*, 384 F.2d 348, 353 (3d Cir. 1967)). The Court's determination of the "appropriate" relief is based upon all the facts and circumstances before it. *Id.* As the Supreme Court stated in *Hall*, section 201 of the LMRDA "necessarily demands that remedies 'be tailored to fit facts and circumstances admitting of almost infinite variety,' and… was therefore cast as a broad mandate to the courts to fashion 'appropriate' relief." *Hall*, 412 U.S. at 10-11 (internal citation omitted); *see also Barnes v. Sanzo*, 680 F.2d 3, 5 (2d Cir. 1982) (remedy must be "fair, reasonable and 'appropriate' within the meaning of section 102 of the LMRDA").

One form of relief that may be appropriate is an award of attorneys' fees to a prevailing plaintiff. *Hall,* 412 U.S. at 15. Under a common benefit theory, attorneys' fees may be awarded when the litigation confers substantial benefits on a group of beneficiaries. *Id.* No bad faith on the part of the defendant need be shown to establish entitlement to attorneys' fees. *Id.* The Court finds attorneys' fees appropriate here, as discussed more fully below.

Defendants have already made restitution to Plaintiff of the dues he paid as a consequence of the vote in violation of the LMRDA. Plaintiff now seeks restitution of dues paid by all members of Local 166 arising from that vote. Plaintiff contends that restitution is appropriate because the vote was unlawfully conducted, and the dues increase improperly benefitted the union officers and staff paid out of those funds.

The action here was not brought as a class action and the Court has denied Plaintiff's efforts to add class allegations post-remand. Having failed to bring the action as one for class-wide monetary relief, Plaintiff cannot now seek to recover on behalf of the other union members. *See Landry v. Sabine Indep. Seamen's Ass'n*, 623 F.2d 347, 350 (5th Cir. 1980) (LMRDA suit was not brought as a class action, and no other union members were joined as plaintiffs, so restitution of dues should be limited to reimbursement of the individual named plaintiffs); *see also Ellis v. Civil Serv. Employees Ass'n, Inc., Local 1000, AFSCME, AFL-CIO*, 913 F. Supp. 684, 688 (N.D.N.Y. 1996) ("to the extent that plaintiff has asserted claims against defendant on behalf of his fellow union members, he has failed to state claims on which the Court can grant relief").

Although Corns argues that restitution is the normal remedy for an LMRDA violation like this, the cases on which he relies were all ones where a class had been certified. *See Teas v. Local*

6

*413, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 504 F. Supp. 12, 14 (S.D. Ohio 1978) (class certified); *Gravenstein v. Campion*, 96 F.R.D. 137 (D. Alaska 1982) (same); *Peck v. Associated Food Distributors of New England, Local No. 138*, 237 F. Supp. 113 (D. Mass. 1965) (same); *cf. Hummel v. Brennan*, 83 F.R.D. 141, 144 (E.D. Pa. 1979) (while injunctive relief in LMRDA suit flowed to all union members, absent class certification reimbursement of dues collected could only be granted to named plaintiffs).

Moreover, as the Court sits in equity to decide the appropriate remedy here, the Court takes into account the fact the dues collected under the 2008-2010 Local 166 Agreements total approximately $322,520. (Dkt. No. 99.)[3] An order requiring restitution of that total would be a significant, if not crippling, financial obligation. The Court must remain mindful of the purposes of actions to enforce the LMRDA: to ensure that unions are run democratically. *Hall*, 412 U.S. at 7-8 (LMRDA is the 'Bill of Rights of Members of Labor Organizations' and was specifically designed to promote the 'full and active participation by the rank and file in the affairs of the union'). A remedy that destroys the entity it is meant to protect would not be in keeping with such purposes, particularly where, as here, there is no alleged improper conduct by any union officials. *See Barnes v. Sanzo*, 680 F.2d 3, 5 (2d Cir. 1982) ("Given the small size of the Union and the amount of money involved, the district court could properly have concluded that ordering a refund of all unlawfully collected dues would be as disadvantageous to the membership as to the Union officials"); *Myers v. Hoisting & Portable Local 513*, 653 F. Supp. 500, 510-11 (E.D. Mo. 1987) (costs of accounting for the dues collected on account of improper vote, and then redistributing it to members would likely be as harmful to the members as it would be to the defendants, and thus not an "appropriate remedy" under *Hall*).

The Court finds that punitive damages or a fine are not an appropriate remedy under the facts here. The LMRDA violation here did not involve wrongdoing by the union's officers. The

---

[3] Defendants filed an Administrative Motion to File Under Seal certain documents containing personal information of non-party Local 166 members, including address information and dues collected. The Court finds that there are compelling reasons to seal this private, personal information which bears only a tangential relationship to the matters to be decided here. The Motion to File Under Seal at Docket No. 99 is **GRANTED**.

conduct at issue in this litigation is not alleged to have been malicious, wanton or reckless. *Cf. Cooke v. Orange Belt Dist. Council of Painters,* 529 F.2d 815, 820 (9th Cir. 1976) (punitive damages for LMRDA violation requires more than mere liability under the Act).

The action here created benefits that flowed to the membership of Local 166 generally. The Ninth Circuit's decision declared the rights of the litigating parties, eliminating the need for any additional declaratory relief on remand. As a consequence of the Ninth Circuit's ruling, the International directed all local unions to ensure that their constitutions complied with the requirement of having dues increases approved only by organizations in which the affected persons are members. Changes in the Local 166 and District Council constitutions have been made that will prevent future violations of this type, negating the need for injunctive relief. Further, the District Council, after the constitutional change, held a special dues convention to ratify dues increases from July 2011 to present. In short, the Ninth Circuit's decision and the actions taken by Defendants as a result of the litigation moot the need for any further declaratory or injunctive relief.[4]

That said, the changes here would not have come about absent the litigation. Thus, the Court finds that the appropriate relief is limited to an award of reasonable attorneys' fees.

**II. ATTORNEYS' FEES**

    **A. Lodestar**

        **1. Rate**

Based upon the evidence submitted by Plaintiff, and the lack of any opposition or objection by Defendants, the Court finds that Plaintiff's counsel's requested rate of $450 per hour is reasonable given the prevailing market rates for an attorney of his level of skill and expertise in the area of labor law and appellate practice.

        **2. Hours**

The Court finds Plaintiff's requested hours generally reasonable. Plaintiff made significant reductions in the hours sought, eliminating hours for unsuccessful motions for rehearing and to

---

[4] In his post-remand briefing, Plaintiff has not sought any further declaratory or injunctive relief, but has focused on monetary relief.

8

disqualify Defendants' counsel, and significantly cutting the hours sought on his unsuccessful motion to amend. He also eliminated hours on an irrelevant matter and trimmed hours based on exercise of billing judgment. Having reviewed the detailed records, the Court believes that a total of 375 hours is well within reason for counsel's work on the litigation at the district court, the appeal, and the post-remand hearings and briefing concerning the appropriate remedy (including opposing Defendants' Motion for Retroactive Election and Stay).

This leads to a base lodestar of $168,750.00.

**B.      Lodestar Adjustment**

The lodestar figure is a presumptively reasonable amount of attorney's fees. *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542 (2010). While such a presumption is strong, it "may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee" *Id.* at 554. Thus, the Supreme Court has also held that:

> the product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the "results obtained." This factor is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief.

*Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Faced with these circumstances, a district court should consider reducing the lodestar when the claims on which plaintiff did not prevail were unrelated to those on which he succeeded, or when plaintiffs' success on any interrelated unsuccessful and successful claims was limited. *Gates v. Deukmejian*, 987 F.2d 1392, 1404 (9th Cir. 1992) (citing *Hensley,* 461 U.S. 434-35); *see also Thorne v. City of El Segundo,* 802 F.2d 1131, 1141 (9th Cir. 1986).

A court may also consider an upward adjustment of the lodestar, or a multiplier, to account for special circumstances such as an extraordinary outlay of expenses, particularly protracted litigation, or a significant delay in payment of fees. *Perdue*, 559 U.S. at 556. "[T]he novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors 'presumably [are] fully reflected in the number of billable hours recorded by counsel.' " *Perdue*, 559 U.S. at 552-553; *Mitchell Engineering v. City and County of San Francisco*, C 08-

9

04022 SI, 2011 WL 1431511, * 6 (N.D. Cal. Apr. 14, 2011) (citing *Perdue*).  The contingency risk in the litigation is a factor "presumably taken into account in either the reasonable hours component or the reasonable rate component of the lodestar calculation."  *Morales v. City of San Rafael*, 96 F.3d 359, 364, n. 9 (9th Cir. 1996), citing *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied* 425 U.S. 951 (1976).

      Defendants argue that the hours should be reduced due to Plaintiff's lack of success on his claim of an improper vote to increase organizing fees, as well as the fact that his success on the dues issue was limited and was reversed for reasons different than those he argued to the Ninth Circuit.  Plaintiff argues against these reductions and in favor of a 2.0 multiplier, based on the benefits of the litigation that inured to the membership of LIUNA, the novelty of the questions involved in the litigation, the contingency risks counsel accepted in representing Plaintiff, and the general "undesirability" of the kind of union dispute litigation involved here.

      The Court finds that the organizing fee increase and dues increase issues were related, were pleaded as part of the same claim, and concerned essentially the same course of conduct by Defendants.  However, Plaintiff's success was limited in that he did not persuade the Ninth Circuit to rule in favor of what he had alleged: that a secret ballot election of the membership is the only manner in which the dues and fees could be increased.  *Corns v. Laborers Int'l Union of N. Am.*, 709 F.3d 901, 912-13 (9th Cir. 2013).  The Ninth Circuit's reversal of summary judgment was on grounds never argued by Plaintiff.  *Id.* at 914-16.  Moreover, the reversal was partial: it only affected the increased dues, not the organizing fees.  *Id.* at 916.  Further, the factors Plaintiff claims warrant an upward adjustment are either subsumed in the lodestar calculation already, or are lacking in evidentiary support.  Nevertheless, Plaintiff's partial success resulted in a clarification of the District Council constitutions nationwide, and an affirmation of union members' statutory voting rights.

      Taking the foregoing into account, the Court finds that a 25% reduction in the lodestar is appropriate.  Plaintiff only succeeded on only one of the two issues raised in his claims, but the issues are, to some extent, interrelated.  Further, his success was for reasons far different from those

10

he argued. Hence, a 25 percent reduction—significant while still recognizing that Plaintiff prevailed, in part – seems to the Court to be the fairest way of calculating the fee award. This brings the award to $126,562.50.

### C.     All Defendants Are Responsible for the Award

LIUNA argues that it is not liable for attorneys' fees because there is no evidence that it was on notice of the alleged constitutional defects or that it ratified the dues increase here. The undisputed facts have established that the District Council approved the wage and dues increases that were the subject of this litigation, and that LIUNA took the position that the increases were proper under the Local's and the District Council's constitutions, despite Corns' protests that the increases were not imposed by a proper vote. The Court finds that it is appropriate for the fee award to run against all Defendants jointly and severally.

"[R]atification can only occur when the principal, having knowledge of the material facts involved in a transaction, evidences an intention to ratify it." *Rodonich v. House Wreckers Union Local 95 of Laborers' Int'l Union*, 817 F.2d 967, 973 (2d Cir. 1987) (*quoting Breen Air Freight, Ltd. v. Air Cargo, Inc.*, 470 F.2d 767, 773 (2d Cir. 1972), and *citing* RESTATEMENT OF AGENCY 2D ¶¶ 91, 93-100). The dues increase vote election imposing the dues increase was determined by the Ninth Circuit to be improper for reasons other than those offered by Corns. However, there is no question that LIUNA knew of all the *facts* material to the dues increase election and rejected Corns' complaint that the election was improper. Thus, unlike *Rodonich*, the International here had full knowledge of the material facts when it approved the conduct of the District Council and Local 166 over Corns' complaint. *Cf. Rodonich*, 817 F.2d at 973 (international's liability under a ratification theory had to be established by knowledge of the *facts* of union officers' unlawful acts, not just international's knowledge of plaintiff's *complaint* of such wrongdoing). Under these circumstances, the International cannot be heard to argue that it bears no obligation to pay attorneys' fees in this litigation.

Defendants also argue that there can be no liability for the District Council since, as a consequence of the Ninth Circuit's holding, Corns has no standing as a "member" of that

11

organization. As Defendants themselves have argued repeatedly, it was only a technical defect in the District Council's constitution that caused Corns *not* to be a member at the time of the dues increase and the start of this litigation. Defendants apparently understood him to be a member and never raised any defense or motion to the contrary, either in the original district court proceedings or on appeal. Moreover, that technical defect has now, by Defendants' own report, been cured. The District Council's arguments for avoiding joint liability are, therefore, unpersuasive. *Cf. John Brady v. Int'l Bhd. of Teamsters, Theatrical Drivers & Helpers Local 817*, 741 F.3d 387, 389 (2d Cir. 2014) (recognizing that a person may be a "member in substance" if the person meets the qualifications for being a member but union officials have not yet performed the ministerial acts precedent to formal admission and recognition).

### III.  CONCLUSION

Therefore, the Court shall enter a judgment in favor of Plaintiff Alex Corns in the amount of $126,562.50 against Defendants Laborers International Union of North America; Northern California District Council of Laborers; and Hod Carriers Local Union No. 166, jointly and severally.

This Order terminates Docket Nos. 99 and 104.

**IT IS SO ORDERED**.

Date: July 29, 2014

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**